UNITED STATES BANKRUPTCY COURT      Return Date: July 21, 2009
SOUTHERN DISTRICT OF NEW YORK
-----------------------------x
In Re:      Case No. 08-23598
Kevin Lynch & Denise Casey Lynch.
Chapter 11
     Debtor
-----------------------------X

## NOTICE OF HEARING TO APPROVE DEBTORS' DISCLOSURE STATEMENT AND PLAN

**TO ALL PARTIES:**

**PLEASE TAKE NOTICE** upon the affidavit of Kevin Lynch & Denise Casey Lynch will move pursuant to Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c)

|  |  |
|---|---|
| JUDGE: | Hon. Robert D. Drain |
| RETURN DATE AND TIME: | July 21, 2009 10:00 am |
| PLACE: | US Bankruptcy Court<br>One Bowling Green<br>New York, NY 10004<br>Courtroom 610 |
| RELIEF REQUESTED: | To approve Debtors Disclosure Statement and Plan |
| BASIS FOR RELIEF REQUESTED: | 105(a) and 1015(c) |

DATED: June 17, 2009
     Spring Valley, NY

         _____/s/_ Joshua N. Bleichman
         Joshua N. Bleichman
         Attorneys for Debtor
         268 ROUTE 59
         Spring Valley, NY   10977
         (845) 425-2510

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Return Date: July 21, 2009

-----------------------------x
In Re:

Case No. 08-23598

Kevin Lynch & Denise Casey Lynch
Chapter 11

       Debtor

-----------------------------X

## NOTICE OF HEARING TO APPROVE DEBTORS DISCLOSURE STATEMENT

     **PLEASE TAKE NOTICE** that the following is currently scheduled to be heard on

**Tuesday July 21, 2009, at 10:00 am**, before the Honorable Judge Robert D. Drain United States

Bankruptcy Court, One Bowling Green, Courtroom 610, New York, New York:

> DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE
> DISCLOSURE STATEMENT WITH RESPECT TO JOINT PLAN OF
> REORGANIZATION OF KEVIN AND DENISE CASEY LYNCH, *ET AL.*,
> DEBTORS ("the Disclosure Statement"); (II) APPROVING FORM OF BALLOTS AND
> PROPOSED SOLICITATION AND TABULATION PROCEDURES FOR THE JOINT
> PLAN OF REORGANIZATION OF KEVIN AND DENISE CASEY LYNCH
> DEBTORS ("the plan") (III) PRESCRIBING THE FORM AND MANNER OF
> NOTICE THEREOF; (IV) ESTABLISHING PROCEDURES FOR (A) VOTING IN
> CONNECTION WITH THE PLAN CONFIRMATION PROCESS AND (B)
> TEMPORARY ALLOWANCE OF CLAIMS RELATED THEREOF; (V)
> ESTABLISHING DEADLINE FIR FILLING OBJECTION TO THE JOIN PLAN OF
> REORGANIZATION OF KEVIN AND DENISE CASEY LYNCH DEBTORS; AND
> (VI) SCHEDULING A HEARING TO CONSIDER CONFIRMATION OF THE JOINT
> PLAN OF REORGANIZATION OF KEVIN AND DENISE CASEY LYNCH,
> DEBTORS (the "Disclosure Statement Motion").

Pursuant to the Order *Pursuant to Section 105 (a) of the Bankruptcy Code and
Bankruptcy Rules 1015(c) establishing Certain Notice and Case Management
Procedures,* objections to the Disclosure Statement Motion must be filed with the
Bankruptcy Court By **Thursday July 16 , 2009**

Copies of the Disclosure Statement Motion, the Disclosure Statement, the Plan, and the
proposed order approving the Disclosure Statement can by contacting Joshua N.
Bleichman, 268 Route 59 West, Spring Valley, NY 10977, or by calling 845-425-2510.

Dated June 17, 2009
Spring Valley, NY

Respectfully Submitted,

      /s/ Joshua N. Bleichman
Joshua N. Bleichman
Attorney for Debtors
268 Route 59 West
Spring Valley, NY 10977
(845)425-2510

CERTIFICATE OF SERVICE

STATE OF NEW YORK
COUNTY OF ROCKLAND

I, Joshua N. Bleichman, an attorney admitted to practice before this court affirms under the penalties of perjury that I am not a party to this action and that I am over the age of 18 years old. I served the within Disclosure Statement Motion, the Disclosure Statement, and the Plan on June 17, 2009, by depositing a true copy thereof by ECF or a post-paid wrapper, placing it in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, first class mail, addressed to the following persons:

Tammy Terrell
Attorney for Indy Mac
747 Chestnut Ridge Rd
Ste 200
Chestnut Ridge, NY
10977

Martin Mooney
Attorneys for GMAC
Office and P.O. Address
8 Thurlow Terrace
Albany, New York
12203-100

Peter G. Vigue President
c/o TD Bank North
1701 Route 70 East
Cherry Hill, NJ 08034

A. Albert Buonamici
Attorney for JP Morgan
Chase
222 Bloomingdale Road
Suite 301
White Plains, New York
10605

Andrew B. Helfand,
Esq.
Attorney for Wachovia
Bank
60 East 42nd Street,
Suite 1048

New York, NY 10901

United States Trustee
33 Whitehall Street
21st Floor
New York, NY 10004

GE Consumer Finance
PO Box 960061
Orlando, FL 32896

RBS Citizens NA
Charter One Bank NA
10561 Telegraph Rd
Glen Allen, VA 23059

Capital One Bank
c/o TSYS Debt
Management
PO Box 5155
Norcross, GA 30091

Cach, LLC
4340 s. Monaco St 2nd
Floor
Denver, CO 80237

Internal Revenue
Service
Insolvency Section
PO Box 21126
Philadelphia, PA 19114

Specialized Loan
Servicing, LLC
8742 Lucent Blvd Suite
300
Highlands Ranch, CO
80129

First Equity Card
c/o Creditors
Bankruptcy Service
PO Box 740933
Dallas, TX 75374

Lucy Rizzo
1 Amando Court
Suffern, NY 10901

Chase Bank USA
c/o Weinstein and Riley,
PS
2001 Western Ave Ste
400
Seattle, WA 98121

Mld Mortgage, Inc
c/o Countrywide Home
Loans Servicing
2270 Lakeside Blvd.
Mail Stop RLS-4
Richardson, TX 75082

Wachovia Dealer
Services
PO Box 19657
Irvine, CA 92623

Bank of America
1000 Samoset Dr
DE5-023-03-03
Newark, DE 19713

Recovery Management
Systems Corp

25 SE 2nd Ave Ste 1120
Miami, FL 33131

Citibank
Exception Payment
Processing
PO Box 6305
The lakes, NV 88901

Beverly Maulfair
Greenwood Lake Home
Center

Po Box 14
Greenwood Lake, NY
10925

RBS Citizens
Buchanan, Ingersoll,
&Rooney, PC
Key Ctr. at Fountain
Plaza, Ste 1230
Buffalo, NY 14202

<u>/s/ Joshua N. Bleichman</u>
Joshua N. Bleichman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x
IN RE:                                          Index No. 08-23821
Kevin Lynch & Denise Casey Lynch                      Chapter 11
_____x

## Order

Upon application of the debtors to approve Debtors Disclosure Statement and

plan after a hearing on July 21, 2009, and there being no objection

It is hereby ordered:

The motion is granted;

Dated July __, 2009

_____

Hon. Robert D. Drain
Bankruptcy Judge

# United States Bankruptcy Court

_____SOUTHERN_____ District of _New York_____

In re Kevin Lynch & Denise Casey Lynch,   Case No. 08-23598
Debtors

Small Business Case under Chapter 11

Kevin Lynch & Denise Casey Lynch, Dated June 15, 2009

I.     **INTRODUCTION**

   This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of
_____Kevin and Denise Casey Lynch_____ (the Debtors). This Disclosure Statement contains
information about the Debtor and describes the First Proposed Plan of Reorganization (the "Plan")
filed by the Debtor on June 15, 2009. A full copy of the Plan is attached to this Disclosure Statement as
Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement
carefully and discuss them with your attorney. If you do not have an attorney, you may wish to
consult one.*

   The proposed distributions under the Plan are discussed at pages 8-10 of this Disclosure
Statement. General unsecured creditors are classified in Class 4, and will receive a distribution of
   5 % of their allowed claims, to be distributed as follows monthly over five years

   A.     **Purpose of This Document**

   This Disclosure Statement describes:

   1.     The Debtors significant events during the past year prior to filing.

   2.     How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what
          you will receive on your claim or equity interest if the plan is confirmed),
          There are no equity interests in any of the debtor's holdings.

   3.     Who can vote on or object to the Plan,
          All creditors may vote on the plan.

   4.  What factors the Bankruptcy Court (the "Court") will consider when deciding whether to
       confirm the Plan,
       The factors the Court should consider in deciding to confirm the plan is the interest in
       the debtors' reorganization and the long term goals of paying creditors more than they
       would receive in a liquidation.

       Why the Debtors believe the Plan is feasible. The treatment of your claim or equity
       interest under the Plan compares to what you would receive on your claim or equity
       interest in liquidation, and is greater than in liquidation.

   •      The effect of confirmation of the Plan will allow creditors to be paid more than they
          would receive in a liquidation.

   Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement
describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

   B.     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

   The Court has not yet confirmed the Plan described in this Disclosure Statement. This section
describes the procedures pursuant to which the Plan will or will not be confirmed.

1.     The hearing at which the Court will determine whether to [finally approve this Disclosure Statement and] confirm the Plan will take place on  July 21, 2009 , at 10 am, in Courtroom  610    , at the US Bankruptcy Court One Bowling Green New York, NY 10004

2.     *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot to 268 Route 59 Spring Valley, NY 10977. See section IV A. below for a discussion of voting eligibility requirements.

Your ballot must be received by July 16, 2009 or it will not be counted.

3.     *Deadline for Objecting to the [Adequacy of Disclosure and] Confirmation of the Plan*

Objections to [this Disclosure Statement or to] the confirmation of the Plan must be filed with the Court and served upon see attached list of Creditors by July 16, 2009.

4.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact
*Joshua N. Bleichman*

C.     **Disclaimer**

*The Court has [conditionally] approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. [The Courts approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until July 16, 2009*

**BACKGROUND**

A.     **Description and History of the Debtors**

a)  The debtors, entered into the residential housing construction business in 2004. One of the first projects purchased, was 83, 84, 85 Sterling Road, Greenwood Lake, NY which consisted of two vacant lots and a third lot with an existing building. Building Permits and construction commenced on two of the lots and were sold at losses. The remaining 85 Sterling Road had an existing building and could not be sold. It is currently being rented for $2500.00 per week during the vacation season (six months). The remaining six months, the house is vacant.

b)    The second project was 62 Sterling Road, Greenwood Lake, NY. It was renovated into a bed and breakfast establishment; however, the business lost money annually. The property was sold at a loss before the bankruptcy filing.

c)    The debtor's home is located at 145 West Main Street, Stony Point, NY. The value as of the time of filing is $460,000.00. There is an existing first mortgage on the home in the approximate amount of $502,000.00. There is a second mortgage with Specialized Loan Servicing in the approximate amount of $212,000.00.

d)    The debtors hold a triple net lease on 28 Knapp Road, Stony Point, NY. There are three rentals on the property year round. The rents pay the mortgage service and expenses on the properties. The gross income is approximately $32,400.00 annually.

e)    The debtors own a 50% interest in 30 Knapp Road, Stony Point, NY. It is a single-family residence. The value as of the time of filing is $330,000.00. There is an existing first mortgage on the home in the approximate amount of $328,000.00. The debtors share of net loss of approximately $7200.00 annually.

f)    The debtor Kevin Lynch operates a tax service and nets $48,000.00 annually.

g)    The debtor Kevin Lynch operates a health, life, and disability business, which nets $26,000.00 annually.

h)    The debtor Denise Lynch is a public school teacher and nets $73,840.00, which pays the household expenses of the debtors.

The Debtors are Individuals

Since 1992, the Debtor has been in the business of Insurance Sales/ Real Estate Development NY Services Inc. Which Mr. Lynch is 100% shareholder is in the business of Group Health Insurance Sales to Medical and dental groups. The Lynch's were also involved in Real estate development and rental properties.

B.    **Insiders of the Debtor**
      None

## C.    Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were NA

The Managers of the Debtor during the Debtor's chapter 11 case have been NA Debtor during the Debtor's chapter 11 case ]

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be: NA. The responsibilities and compensation of these Post Confirmation Managers are described in section NA of this Disclosure Statement.

### D.     Events Leading to Chapter 11 Filing

Debtors purchased 4 properties for rehabilitation and sale the market significantly changed and the value of the property decreased. The debtors utilized existing credit lines, and personal savings to develop the properties. The Debtors can no longer make minimum payments and sought bankruptcy protection.

### E.     Significant Events During the Bankruptcy

There were no asset sales during the ordinary course of business, debtor in possession, financing or cash collateral orders.

- Describe any asset sales outside the ordinary course of business, debtor in possession financing, or cash collateral orders. None
- Identify the professionals approved by the court. Joshua N. Bleichman
- Describe any adversary proceedings that have been filed or other significant litigation that has occurred (including contested claim disallowance proceedings), and any other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Court. None
- Describe any steps taken to improve operations and profitability of the Debtor. New Marketing efforts were started. Fixed expenses were reduced. Redundant services were eliminated.
- Describe other events as appropriate. None

### F.     Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### G.     Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H.     Current and Historical Financial Conditions

The identity and fair market value of the estates assets are listed in Exhibit B. [Identify source and basis of valuation.] Regional Appraisal Company

The Debtors most recent financial statements [if any] issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case are set forth in Exhibit D.

III    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.     What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.     Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.     *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor=s chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court. | 7500 00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk=s Office Fees | | Paid in full on the effective date of the Plan |
| Other administrative expenses | | Paid in full on the effective date of the Plan or according to separate written agreement |

| Office of the U.S. Trustee Fees | 1300.00 | Paid in full on the effective date of the Plan |
|---|---|---|
| TOTAL | 8800.00 | |

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtors estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| | | | Pmt interval          = <br> [Monthly] payment     = <br> Begin date            = <br> End date              = <br> Interest Rate %       = <br> Total Payout Amount   = $ |
| | | | Pmt interval          = <br> [Monthly] payment     = <br> Begin date            = <br> End date              = <br> Interest Rate %       = <br> Total Payout Amount   = $ |

## C.    **Classified Claims and Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan: None

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtors bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtors secured prepetition claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secured claim of:* Name =Citizens Bank  Collateral description = 145 Main St Allowed Secured Amount = $_496,000.00  Priority of lien = 0 Principal owed = $ 496,000.00 Pre-pet arrearage = $0  Total claim = $_496,000.00 | No | No | [Monthly] Pmt    =4332.00 Outside Plan = |

| 3 | *Secured claim of:*<br>Name =Indy Mac<br><br>Collateral description =<br>85 sterling Rd<br>Allowed Secured Amount =<br>432,000 00<br>Principal owed =<br>$_432,000 00 | NO | Yes | Monthly Pmt    5232 00<br><br>= |
|---|---|---|---|---|
| 3 | Name Countrywide<br>Collateral Description<br>30 Knapp Rd<br>Allowed Secured Amount<br>300,000 00<br>Principal Owed<br>$322,493 00 | No | No | Monthly Pmt<br>2856 00 |
| 3 | TD Bank<br>Collateral Description<br>28 Knapp Rd<br>Allowed secured amount<br>$249,000 00<br>Principal Owed<br>$22,191 00 | No | Yes | Monthly Pmt<br>1849 25 |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | GE Consumer Finance FOR Kintico/GEMB<br><br>GE Consumer Finance for Mohawk/GEMB<br><br>Capital One<br><br>Cach, LLC<br><br>Internal Revenue Service<br><br>First Equity Card<br><br>Lucy Rizzo<br><br>Chase Bank<br><br>Bank of America<br><br>Old Navy<br><br>Wal Mart<br><br>Jc Penney Rewards<br><br>Citibank<br><br>Beverly Maulfair<br><br>RBS Citizens | no | Percentage of claim will be paid through the plan over sixty months |

3.    *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plans proposed treatment of Class[es] __ through __, which contain general unsecured claims against the Debtor:

4.    *Class[es] of Equity Interest Holders.*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plans proposed treatment of the class[es] of equity interest holders: [There may be more than one class of equity interests in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

D.      **Means of Implementing the Plan**

  1.      *Source of Payments*

Payments and distributions under the Plan will be funded by the following:
Payroll, Rental payments, and self-employed income

  2.      *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

E.      **Risk Factors**

The proposed Plan has the following risks:
Continuing down turn in the economy

F.      **Executory Contracts and Unexpired Leases**

The Plan, in Exhibit 5.1, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Exhibit 5.1 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 5.1 will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is July 16, 2009 .* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise]

### G. **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following are the anticipated tax consequences of the Plan: (1)Tax consequences to the Debtor of the Plan; Debtor is insolvent and therefore and there are no anticipated tax consequence of the plan (2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation. Tax consequence is the same as any other valid business transaction

## IV **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes __2__ are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes __4__ are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor=s schedules, unless the claim has been scheduled as disputed,

contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:
- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section [B.2.].

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not discriminate unfairly, and is a fair and equitable toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cram down at confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.    *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan and the sources of that cash are attached to this disclosure statement as Exhibit F.

2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $ 5576.00 .

[Summarize the numerical projections, and highlight any assumptions that are not in accord with past experience. Explain why such assumptions should now be made.]

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## V.     EFFECT OF CONFIRMATION OF PLAN.
### A.     DISCHARGE OF DEBTOR.

**[Option 1 – If Debtor is an individual and § 1141(d)(3) is not applicable]**
Discharge. Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code. Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoking on the Plan.

Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan @]

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI.     OTHER PLAN PROVISIONS

None

                          /s/  Kevin Lynch        /s/ Denise Casey Lynch
                                                  Kevin and Denise Casey Lynch

                                      /s/ Joshua N. Bleichman
                                                  Joshua N. Bleichman

**Exhibit A**
Copy of Proposed Plan of Reorganization

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------x

In Re:                                          Case No  08-23598
KEVIN LYNCH & DENISE CASEY LYNCH.
              Debtor                            Chapter 11
----------------------------X

## PLAN OF REORGANIZATION, DATED June 15, 2009

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of KEVIN LYNCH & DENISE CASEY LYNCH (the "Debtors") from wages and business income from, cash flow from operations, and future income.

This Plan provides for two classes of secured claims; one class of unsecured claims; and one class of priority claims.  There are no equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately  05 cents on the dollar. This Plan also provides for the payment of administrative and priority claims which includes counsel to the debtor, quarterly fees to the United States Trustee and tax claims for the United States Treasury and the New York State Department of Taxation and Finance.

A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors is circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1. All allowed claims entitled to priority under §507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under §507(a)(8)). Section 1129(a)(9)(D) of the Code provides that a secured tax claim which would otherwise meet the description of a priority tax claim under § 507(a)(8) of the Code is to be paid in the same manner and over the same period as prescribed in §507(a)(8).

2.02 Class 2. The claims of secured creditors, which have a security interest in the debtors primary residence to the extent allowed as a secured claim under §506 of the Code shall be paid 100% for the arrears portion of the claim. Post-petition payments for the mortgage on the debtors' home will be paid outside the plan.

2.03 Class 3. The claims of secured creditors, which do not have a security interest in the debtors primary residence to the extent allowed as a secured claim under §506 of the Code will be reduced to the fair market value of the property as of the date of filing.

2.04 Class 4. All unsecured claims allowed under § 502 of the Code will be paid 5% of the unobjected to timely filled claim.

2.05 Class 5. The interests of the Debtors in property of the estate shall revest with the debtors subject to allowed secured claims as determined by this plan.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims will be paid 100% of the claim.

3.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor will be paid 100% of the claim.

3.03 Priority Tax Claims. Each holder of a priority tax claim will be paid will be paid 100% of its claim consistent with § 1129(a)(9)(C) of the Code.

3.04 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

**Class Impairment Treatment**

Class 1 - Priority Claims. Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final nonappealable order.

Class 2 – Secured Claim of Creditors Holding a security interest in the debtors primary residence will be paid 100% of the unobjected to arrears portion of the claim. The Claim

is unimpaired. Post Petition payments will be paid outside the plan. Distribution shall be over 60 months

Class 3 - Secured Claims of Creditors Holding a security interest in property which is not the debtors primary residence will be paid 100% of the unobjected arrears portion of the claim, provided the total amount or the arrears and the unpaid balance of the claim is not more that the fair market value as of the date of filing. The Claim is impaired. Post Petition payments will be paid outside the plan, provided the arrears and the unpaid balance of the claim is not more that the fair market value as of the date of filing. Distribution shall be over 60 months. A hearing may be required to establish the value of the property securing the claim. The unsecured portion of the claim will be paid as a Class 4 claim, below

Class 4 - General Unsecured Creditors

All claimants in this class are impaired as payment in this class will be a percentage of the amount of the claim paid over sixty months directly to each claimant provided the claim is timely filed and not objected to; if objected to, then after a Court Order determining the amount of the claim, if any.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been timely filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated or (iii) the claim is beyond the statute of limitations.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account
of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to
settle and compromise a disputed claim with court approval and compliance with Rule
9019 of the Federal Rules of Bankruptcy Procedure

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases. N/A

## ARTICLE VII
## GENERAL PROVISIONS

7.01 Definitions and Rules of Construction. The definitions and rules of construction
set forth in §§101, 102 and 506 of the Code shall apply when terms defined or construed
in the Code are used in this Plan, and they are supplemented by the following definitions:
The Debtor is a Debtor in Possession and shall have the same rights as a Trustee pursuant
to the Code.

7.02 Effective Date of Plan. The effective date of this Plan is the eleventh business day
following the date of the entry of the order of confirmation. But if a stay of the
confirmation order is in effect on that date, the effective date will be the first business day
after that date on which no stay of the confirmation order is in effect, provided that the
confirmation order has not been vacated.

7.03 Severability. If any provision in this Plan is determined to be unenforceable, the
determination will in no way limit or affect the enforceability and operative effect of any
other provision of this Plan.

7.04 Binding Effect. The rights and obligations of any entity named or referred to in

this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity

7.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York shall govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII
## DISCHARGE

Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure after the Court makes a final determination of non-dischargeability or dischargeability.

Respectfully submitted,

Date June 10, 2009 Signature /s/ Kevin Lynch
Kevin Lynch, Debtor

Date June 10, 2009 Signature /s/ Denise Casey
Denise Casey, Joint Debtor

By: /s/ Joshua N. Bleichman
Joshua N. Bleichman, Attorney for the Debtors